UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAY BRAHMBHATT,

        Plaintiff,                        Case No. 1:12cv919

vs.                                  Chief Judge Dlott
                                        Magistrate Judge Bowman

GENERAL PRODUCTS CORPORATION,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff brings this action through counsel against defendant General Products Corporation ("General Products") alleging that defendant discriminated against him on the basis of his national origin and race in violation of Ohio Revised Code § 4112. Plaintiff also brings a claim for breach of contract. This matter is now before the Court on the Defendants' motion for summary judgment (Doc. 39); Defendants' proposed undisputed facts with supporting depositions and attachments (Doc. 39, Exs. 1-24); Plaintiff's memorandum and supporting attachments, including his response to Defendant's undisputed facts (Doc. 43), as well as Defendant's reply memorandum. (Doc. 44) Also before the court is Plaintiff's motion for partial summary judgment on his breach of contract claim (Doc. 38) and the parties' responsive memoranda. (Docs. 42, 45).

The parties' motions for summary judgment have been referred to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I now recommend that the Plaintiff's motion for partial summary judgment be DENIED and Defendant's motion for summary

judgment be DENIED with respect to Plaintiff's breach of contract claim, and GRANTED as to Plaintiff's discrimination claims.

## I. Background and Facts

Defendant General Products is a manufacturing company specializing in providing precision machined assemblies and supply chain solutions. General Products is headquartered in Livonia, Michigan and also has facilities in Russellville, Kentucky, Angola, Indiana and San Luis Potosi, Mexico. Plaintiff, Jay Brahmbhatt, was born in India and his racial identity is Indian. (Doc. 2, ¶ 20, 23). Plaintiff applied for the position of Plant Manager at General Products' Russellville, Kentucky facility through an online career posting website.

When contacted by General Products HR manager regarding his application, Plaintiff indicated that his skills were better suited for an executive position, such as Vice President. General Products was also looking for a new Vice President of Operations, as the company was in the process of a reorganization. (Doc. 39, Ex. 2). Reorganization of the company was prompted by a significant increase in demand for production of transmission housings from General Projects' largest customer. (Doc. 37, Papiersky Dep. at 14-22). Specifically, General Products was looking for a new Vice President of Operations who could focus on the Russellville, Kentucky facility and improve its performance, which was significantly impeding the company's ability to meet demand due to various production issues. *Id.* at 35, 37.

After indicating his interest in the executive management position, General Products scheduled successive phone interviews and an in-person interview with Plaintiff for the Vice President of Operations position. After the interviews, General

Products' then CEO and CFO had a favorable impression of Plaintiff; and Plaintiff was ultimately offered the Vice President of Operations Position. *Id.* at 15, 18. On or about October 12, 2011 Defendant hired Plaintiff as the Vice President of Operations pursuant to a written employment agreement. *Id.* at 22, 23.

Plaintiff's final offer package included, *inter alia*, health insurance, paid vacation, and a vehicle allowance of $975.00 per month, six months temporary living expenses, and moving expenses up to $10,000. (Doc. 39, Ex. 4). Plaintiff's offer package also provided severance for one year (if termination occurs within the first two years of employment) should his employment be terminated for any reason other than moral turpitude, breach of fiduciary duties or willful violation of any law, rule or regulation (other than a traffic violation or similar offenses). *Id.* Plaintiff was also eligible for bonus programs, including the bonus program based on Corporate EBITDA (earnings before interest, taxes, depreciation and amortization) thresholds achieved for each year, participation in the equity bonus program at approximately 5% of the executive management pool, and a lump sum bonus if the struggling Russellville facility achieved a 13.8% EBITDA and the Mexico plaint achieved a 12.5% EBITA. (Doc. 39, Ex. 4).

As part of the hiring process, Plaintiff was required to review and agree to abide by General Product's corporate policies and procedures, which includes corporate handbooks for the different facilities. (Doc. 39, Ex. 6). Namely, General Products requires every employee to "observe the highest standards of personal and professional business conduct while executing their responsibilities as employees of the Company." *Id.* The policy also defines corporate funds and asserts and provides, "these assets

may not be improperly used to provide personal gain for employees, nor may employees provide others with the assets of the company." *Id.*

*Plaintiff's employment with General Products*

Plaintiff began working on October 31, 2011. In late November 2011, Plaintiff had a telephone conference with Kevin Adler, then CEO and Tim Bennett, Vice President of Technical Services. According to Plaintiff, he was urged to work together with Bennett to improve operation of the plant and "fulfill management expectations". (Doc. 36, Brahmbhatt Dep. at 91). Plaintiff did not like working with Bennett because he felt that Bennett was "interfering in operation." *Id.* at 110. Plaintiff believed that Adler's direction to have Bennett become more involved in the operations of Russellville was race discrimination. *Id.* at 112, 113.

Plaintiff complained to Adler about Bennett in a telephone conversation on January 10, 2011. According to Plaintiff, Alder replied "If Jay do not like this style he may choose to leave. He further told me white can make big difference in south." (Brahmbhatt, p. 110). Adler denies that such statements were made. (Adler Aff., ¶ 18) Plaintiff alleges that he told Tim Foliano (then CFO) and Mary Anne Papiersky (HR Manager) about Alder's comment about a white person being effective in the south. *Id.* at 115. According to Plaintiff, Foliano talked to Alder about the comment. *Id.* at 117. Papiersky, however, testified that Plaintiff never complained that any employee of General Products made a racial comment. (Papiersky Dep. at 86-87).

Thereafter, in December 2011, Plaintiff traveled to General Products San Louis Potosi, Mexico facility to review the facility and its operations. (Doc. 39, Ex 7, 8). During his time in Mexico, Plaintiff was transported to and from the airport and business

related activities by Pedro Pablo Aldrett, an employee of a staffing solution company that was placed at General Products. (Doc. 39, Ex. 9, Aldrett Aff. ¶ 2). According to Aldrett, he drove Plaintiff to dinner and then back to his hotel on the second night of his stay. Later that night, Aldrett contends that Plaintiff requested that he drive him to a nearby adult entertainment venue, which was a strip club. According to Aldrett, Plaintiff stayed inside about 15 to 20 minutes, and then requested that Aldrett take him to 4 to 5 different strip clubs that night. *Id.* at ¶ 8-10. Aldrett returned Plaintiff to his hotel room after midnight. Aldrett reported Plaintiff's activities to the general manager of General Products Mexico. (Doc. 37, Papiersky Dep. at 64). Plaintiff, however, denies that he went to strip clubs in Mexico, but admits that Aldrett drove him around for "dinner, sightseeing and shopping." (Brahmbhatt Dep. at 98).

Plaintiff continued to have problems with Adler and Bennett. On March 12, 2012, Plaintiff alleges that Alder told him he needed to "work with white executive to get results." *Id.* at 122. On or about March 28, 2012, Plaintiff told Bennett not to interfere. Thereafter, an angry exchange occurred between Plaintiff and Aldler. Specifically, Plaintiff testified:

> Kevin [Alder] was very angry as I asked Tim Bennett not to interfere. He told me clearly that Tim Bennett will continue working GPR operation as he can make a big difference being white. Let him ask, let him ask suggestions; let him ask questions to your four managers. He want, he want me not to complaint, he told me, he wanted me not to complain about Tim Bennett and told me to remember about the white person.

(Brahmbhatt Dep. at 124).

The plant's performance continued to concern General Products' customer. On April 2, 2012, Adler informed the management team that the valued customer is "very

concerned over performance" and its executive would be visiting the facility on April 30, 2012. (Doc. 39, Ex. 10). Adler also informed the management team that they had a very short window to start showing some improvement…" *Id.* However, following a staff meeting a few days later with the CEO and CFO to review specific issues and improvement activities, Mike Degenhart, Russellville's Human Resource Manager learned that Plaintiff instructed the manager of the Russellville plant not to speak about the issues they were encountering, such as the machines being down and staffing issues. (Doc. 39, Ex. 11).

On April 11, 2012, Plaintiff alleges that he again expressed his frustration with having Bennett working with him. In response to his complaints, Plaintiff alleges that Adler said that Plaintiff 'cannot make much difference like white, what white man can make like Tim." (Brahmbhatt Dep. at 131).

As issues at the Russellville plant continued, the Board of Directors demanded a new strategy. Thereafter, consultants came to the plant on June 14, at the Board's direction. (Doc. 39, Ex. 3). The customer also sent in consultants BBK, an international business advisory firm to evaluate the facility. In a report generated on June 18, 2012, BBK voiced significant concern with the manufacturing operations at Russellville. (Doc. 39, Ex. 13.).

The day after the BBK report was released; Plaintiff testified that "Ed Bristow is involving more and more in operation on daily basis. Build up pressure on me so that make me feel that management wants Ed to take over operations and that I should leave." (Brahmbhatt Dep. at 143).

Based upon Plaintiff's performance and the performance of the plant (financially and operationally), Mary Anne Papierksy, General Products corporate HR Manager, testified that Adler and Tim Foliano began discussing terminating Plaintiff in mid-June 2012. (Doc. 39, Ex. 3 at 46-48).

On June 26, 2012, during a call with CFO Tim Foliano, various other managers, and Plaintiff, CEO Adler assigned the Assistant Plant Manager duties to Stan Edgar. He further instructed that only Engineering, Maintenance and Production departments would report directly to Mr. Edgar. (Doc. 39, Ex. 14). Adler expressly told Plaintiff that he did not want the Quality Department to report to Mr. Edgar. *Id.* Despite this instruction, subsequent to the management meeting, Plaintiff announced to the Russellville facility staff that Quality would report to Mr. Edgar. (Doc. 39, Ex. 14; Papiersky Dep. at 67).

Plaintiff, however, contends that Adler did not tell him that Quality would not report to Mr. Edgar until after he announced that all managers would report to Edgar. (Doc. 36 at 151-52). That same day, Plaintiff further contends that Adler told him, to "keep resignation ready as results are below targets." (Doc. 36 at 143, 144). Plaintiff further claims that Adler said "people in the plant they know that you are not white that is why they don't believe in you." *Id.*

On June 28, 2012, Adler learned from the General Manager of the Mexico facility that Plaintiff used the company driver to take him to strip clubs. (Doc. 37, Papiersky Dep. at 52). Later that day, Plaintiff was formally notified that his employment with General Products was terminated. (Doc. 39, Ex. 16). According to Papiersky:

Once Kevin Adler knew of that information that was the decision to terminate Jay, on top of the other items that I listed. The conduct and the breach of fiduciary duty.

*** 

The big hitter was him using company assets to use our driver, company-paid driver, to driving him to strip clubs in Mexico. That was the deciding factor on his termination. That knowledge of that event, him doing that, when he was in Mexico, using the driver, company-paid driver to drive him to strip clubs while he was on company business, was – he had had enough.

(Doc. 37, Papiersky Dep. at 62, 81).

Plaintiff testified that he received the termination letter in an email from Mary Anne Papiersky on July 28, 2012. (Doc. 36, Brahmbhatt Dep. at 144,145). Shortly thereafter, Kevin Alder told Plaintiff he was terminated because the Defendant wanted to bring a consultant, consultant's plant manager, or a white person who can make more profit. *Id.* When Plaintiff inquired about his severance package he alleges he was only told that Defendant would not pay it with no reasons given. *Id.*

*The Instant Action and Subsequent discovery of Plaintiff's inaccurate resume*

Thereafter, on October 26, 2012, Plaintiff filed the instant action in the Court of Common Pleas in Butler County, Ohio against defendant General Products Corporation alleging that defendant discriminated against him on the basis of his national origin and race in violation of Ohio Revised Code § 4112. Plaintiff also brings a claim for breach of contract. (Doc. 2). Defendant removed the action to this Court on November 30, 2012, on the basis of diversity jurisdiction. (Doc. 1).

During the course of discovery in this matter, it was discovered that Plaintiff omitted certain facts from his resume. Namely, Plaintiff worked for many additional companies that were not listed on his resume and failed to include gaps of

unemployment in 1997, 2001, 2002, 2003, 2007 and 2008. (Brahmbhatt dep. at 23-44). Ms. Papiersky testified that had she seen Plaintiff's accurate job history, she would have never called Plaintiff for an interview. (Doc. 39, Ex. 1). General Products further contends that during his deposition, Plaintiff gave false testimony regarding his employment background, until confronted and then admitted his initial testimony was untrue.

Defendant now moves for summary judgment on all of Plaintiff's claims. Plaintiff also moves for partial summary judgment on his claim for breach of contract.

## II. Analysis

### A. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party

has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support his claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins.Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

**B. Factual disputes preclude summary judgment on Plaintiff's breach of contract claim**

Plaintiff's employment contract with General Products provided that Plaintiff was

entitled to one year of severance pay, based on his compensation at the time of termination, if termination occurs within the first two years of employment, should his employment be terminated for any reason other than moral turpitude, breach of fiduciary duties or willful violation of any law, rule or regulation (other than a traffic violation or similar offenses).  (Doc. 38, Ex. 1).  Notably, the employment agreement did not define such terms.

Plaintiff contends that there are no genuine issues of material fact as to whether Plaintiff should have been paid severance per the terms of his employment contract.  As such, Plaintiff asserts that he is entitled to judgment as a matter of law as to his Breach of Contract Claim.  Defendant, however, argues that Plaintiff is not entitled to such severance because he did not meet the conditions precedent to garnering a severance payment; specifically, that Plaintiff's actions in Mexico constituted a breach of his fiduciary duties.

As detailed above, in December 2011, Plaintiff traveled to San Luis Potosi, Mexico, to review operations at General Products' Mexico facility. On his second night in Mexico, Plaintiff directed Mr. Pedro Pablo Aldrett, a General Products contract employee, to drive him to nearby strip clubs. According to Aldrett, Plaintiff frequented approximately 4 to 5 strip clubs in that one night, all while using company resources for his personal and unprofessional objectives.  Plaintiff denies that he went to strip clubs in Mexico, but admits that Mr. Aldrett drove him around for "dinner, sightseeing and shopping." (Brahmbhatt Dep. at 98).

Defendant admits Plaintiff was not terminated for any reasons concerning moral turpitude or willful violation of a law, but states he was terminated for performance,

conduct, and breach of fiduciary duties. (Doc. 38, Ex. 3). Defendant also produced Mary Anne Papiersky as its sole 30(b)(6) deponent on behalf of the corporation. Ms. Papiersky testified the decision to terminate Plaintiff was made solely by Kevin Alder (CEO) and Tim Foliano (CFO) during a closed-door meeting. (Papiersky Dep. 46-48). Neither still work for Defendant, nor does Defendant have any record of what was said at that meeting. *Id.* Thereafter, Ms. Papiersky merely drafted the termination letter at the direction of Kevin Alder. (Papiersky Dep. at 47) The termination letter is devoid of any reasons for termination. (Doc. 39, Ex. 17).

Plaintiff argues that even if Defendant's contention was accurate, none of the alleged conduct breached any fiduciary duty, violated any law, rule, or regulation, violated any company policy or procedure, nor did the alleged conduct violate common understanding of the severance exclusions. Conversely, accepting Plaintiff's version of events as true, Defendant contends that Plaintiff breached his fiduciary duties to General Products by using the company-paid driver for personal gain—shopping and sightseeing—and therefore he is not entitled to severance pay. The Court cannot make such a determination, however, because whether Plaintiff's actions (under either scenario), constitute a breach of fiduciary duty pursuant to the terms of the employment contract involves the resolution of several material facts.

Notably*,* with respect to Plaintiff's actions in Mexico, Papiersky's deposition testimony provides:

> Q. Was there a policy regarding what executives could and could not do by using the company-provided driver?

> A. There was not a policy. It was expected that they were there for work.

Q. Okay. So if an employee used the driver to go out to dinner following work and then back to the hotel, would that be something that was expected?

A. Yes.

Q. Okay. Was there any -- in the rules and regulations -- or not rules and regulations, excuse me. In the policies or the handbooks is there somewhere written of what an executive can't do when using the driver?

A. There's not specifics in the rules, plant work rules. The company policy statement refers to, you know, that to observe the highest standards of personal professional business conducts while executing their responsibilities as employees of the company.

(Doc. 37, Papiersky Dep. at 61-63)

Thus, as noted by Plaintiff, there is no directive or policy on how General Products are to use company transportation. Furthermore, Plaintiff contends that Mr. Aldrett used his own personal vehicle and therefore General Products did not incur any additional expenses when transporting Plaintiff. (Doc. 43, Ex. 2). In light of the foregoing, whether Plaintiff's use of company resources (either visiting strip clubs and/or or sightseeing) constitutes a breach of his fiduciary duties and/or a violation of company policy involve questions of fact that cannot be resolved on summary judgment. Accordingly, the parties' motions for summary judgment on this claim should be denied and such factual disputes should be resolved by a jury.

**D. Defendant is entitled to Judgment as a Matter of law On Plaintiff's discrimination claims**

1. *Applicable Law*

Ohio Revised Code § 4112 states that it is unlawful to discriminate against a person based on "race, color, religion, sex, military status, national origin, disability, age, or ancestry...." Ohio Rev.Code Ann. § 4112.02(A). The standards for establishing a

discrimination claim under Title VII are equally applicable to plaintiff's claims under Ohio Rev. Code § 4112. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 n.2 (6th Cir. 2000); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).

An employee may base his claim of employment discrimination on a theory of disparate impact or disparate treatment or both. *Lynch v. Freeman*, 817 F.2d 380, 382 (6th Cir. 1987). In the instant case, plaintiff proceeds under the disparate treatment theory of discrimination. Under the disparate treatment theory, the plaintiff must show that the employer has treated some people less favorably than others because of their race, color, religion, sex or national origin. Unlike the disparate impact theory, proof of discriminatory motive is critical in the case of disparate treatment. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 92 (6th Cir. 1982) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Claims of disparate treatment are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002); *Mitchell*, 964 F.2d at 582. The *McDonnell Douglas* burden-shifting analysis requires that plaintiff first establish a *prima facie* case of discrimination. *Id.*

A plaintiff may establish a *prima facie* discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on

its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

A plaintiff who lacks direct evidence of discrimination may establish a *prima facie* case of discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost; and 4) he was replaced by an individual outside the protected class. *Mitchell,* 964 F.2d at 582. Plaintiff may also establish the fourth prong of a *prima facie* case of discrimination by showing that he was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002).

If the plaintiff seeks to establish that he was treated less favorably than a similarly-situated individual, he must prove that all relevant aspects of his employment situation were similar to those of the employee with whom he seeks to compare himself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Id.* (quoting *Mitchell,* 964 F.2d at 583); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000). The determination of whether the plaintiff and another employee shared the same supervisor must be made "on a case-by-case basis and does not depend entirely on whether the two shared the same immediate supervisor." *Barry v. Noble Metal Processing, Inc.*, 276 Fed. Appx. 477, 481 (6th Cir. 2008) (citing

*McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005)). "[I]n many instances, the term 'supervisor' should be construed broadly to include cases where both employees' situations were handled by the same 'ultimate decision-maker.'" *Id.* (citing *McMillan*, 405 F.3d at 414). Accordingly, a plaintiff and a comparable employee who are directly supervised by different individuals may still be similarly situated if the same member of management disciplined both of them. *Id.* (citing *McMillan*, 405 F.3d 405; *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 459 (6th Cir. 2003)).

"[T]he weight to be given to each factor can vary depending upon the particular case." *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003). The ultimate question is whether employees involved in acts of "comparable seriousness" were nonetheless retained. *Clayton*, 281 F.3d at 611 (citing *McDonald v. Santa Fe Transp. Co.,* 427 U.S. 273, 283 n.11 (1976)).

The employer is entitled to summary judgment if the plaintiff does not establish a *prima facie* case. If the plaintiff establishes a *prima facie* case, the employer can overcome the *prima facie* case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas**,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

The Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Financial Services,* 129 S.Ct.

2343 (2009).  The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, *i.e.*, the reason is factually false.  *Id.*  The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge.  *Id.*  If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises.  *Id.*  For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, the plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination.  *Id.*

The Sixth Circuit has cautioned that *Manzer's* three-part test is not to be applied in a formalistic manner.  *See Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).  Rather, the court must bear in mind that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?"  *Id.*  The court must ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong the evidence is.  *Id.*  The 6th Circuit in *Chen* explained,

> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial.  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993).  But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation.  *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148 (2000).  ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was

untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id.*

A plaintiff must allege more than a dispute over the facts upon which heis discharge was based in order to establish pretext. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-494 (6th Cir. 2001). He must put forth evidence that demonstrates the employer did not "honestly believe" in the proffered nondiscriminatory reason for its adverse employment action. *Id.* (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)).  An employer has an honest belief in its nondiscriminatory reason for discharging the employee "where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'"  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Chrysler Corp.*, 155 F.3d at 807).  In determining whether an employer "reasonably relied on the particularized facts then before it," it is not necessary that "the decisional process used by the employer be optimal or that it left no stone unturned."  *Braithwaite*, 258 F.3d at 493 (quoting *Chrysler Corp.,* 155 F.3d at 807).  "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  *Id.* (citing *Chrysler Corp.*, 155 F.3d at 807).  As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.  *Majewski*, 274 F.3d at 1117 (citing *Chrysler Corp.*, 155 F.3d at 806).

Summary judgment in favor of a defendant is appropriate where the plaintiff fails to establish a *prima facie* case or is unable to demonstrate pretext sufficient to rebut the

defendant's legitimate, non-discriminatory reasons.  *Barnhart v. Peckrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1395 (6th Cir. 1993).  "The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination *and* that the employer intended to discriminate on the basis of race." *Thurman*, 90 F.3d at 1166 (emphasis in the original) (citing *Hicks*, 509 U.S. at 502). The finder of fact may infer discrimination from the elements of a prima facie case, coupled with its disbelief of the rationale articulated by the employer.  *See Hicks,* 509 U.S. at 511 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination . . . 'no additional proof of discrimination is required. . . .').  *See also Barnett v. Department of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998); *E.E.O.C. v. Yenkin-Majestic Paint Corp.,* 112 F.3d 831, 835 (6th Cir. 1997); *Thurman,* 90 F.3d at 1166-67.

> *2. No Direct Evidence of Discrimination*

To the extent that Plaintiff claims that he has direct evidence of discrimination, such a contention fails as a matter of law.  Notably, any evidence of discriminatory statements or policies comes wholly from Plaintiff's own deposition.  Plaintiff states that Kevin Adler said that he wanted to bring in a "consultant, consultant plant manager or white guy who could make more profit." (Doc. 43, Brahmbhatt Aff. At ¶ 7).  However, Kevin Alder, a former employee with no stake in this matter, expressly denies such statements. (Doc. 42, Ex. 4, Alder Aff. at ¶ 18).  As such, Plaintiff's statement is self-

serving, uncorroborated, and lacking in credibility.

Courts have held that a plaintiff's testimony alone is not enough to establish a question of fact as to whether direct evidence of racial or sexual discrimination exists. *See, e.g., Carter v. George Washington Univ.,* 180 F.Supp.2d 97, 111 (D.D.C.2001), *aff'd* 387 F.3d 872 (D.C.Cir.2004) ("Self-serving affidavits alone will not protect the non-moving party from summary judgment."); *Lemmons v. Georgetown Univ. Hosp.,* 431 F.Supp.2d 76, 90 (D.D.C.2006) (holding that self-serving statements are not credible enough to overcome summary judgment on a case for direct evidence of discrimination under Title VII); *Alfaro v. Dana Container, Inc.* No. 04-72664, 2005 U.S. Dist. LEXIS 8336 (W.D.Mich. May 9, 2005) (unpublished) (holding that where plaintiff's evidence was his own self-serving and uncorroborated testimony of racial slurs, the evidence was insufficiently credible to serve as direct evidence for Title VII purposes). *But see Terbovitz,* 825 F.2d at 113 (holding that the plaintiff's allegations that defendant had advised her that it would not hire a woman for the position at issue was sufficient to create an issue of direct evidence when other circumstantial evidence supported plaintiff's contention).

Accordingly, Plaintiff has failed to establish any direct evidence of discrimination. As such, the Court will now examine Plaintiff's discrimination claims pursuant to the *McDonnell Douglas* burden-shifting analysis.

*3. Plaintiff Cannot Establish a Prima Facie Case of National Origin and/or Race discrimination*

Defendant argues that it is entitled to judgment as a matter of law because Plaintiff cannot establish the third and fourth prongs of a *prima facie* case of national origin and/or race discrimination.  Notably, the third element in the *prima facie* analysis

requires Plaintiff to establish that he was qualified for the position.  The test in the Sixth Circuit for whether an employee was qualified for her position is whether the employee met the legitimate expectations of his or her employer. *McDonald v. Union Camp. Corp.,* 898 F.2d 1155, 1160 (6th Cir. 1990) (to show qualification, an employer must show that he was "performing his job at a level which met his employer's legitimate expectations" at the time of his dismissal") (citations omitted). For purposes of the *prima facie* analysis, the qualifications of an employee are assessed in terms of whether he or she was meeting the expectations of the employer prior to and independent of the events that led to the adverse action. *Cicero v. Borg–Warner Auto., Inc.,* 280 F.3d 579, 585 (6th Cir. 2002).  Whether Plaintiff met General Products' expectations is "measured at the time the decision to terminate is made." *Id.*

Here, Plaintiff fails to establish that he was meeting General Products' expectations at the time of his termination.  Plaintiff asserts that Defendant cannot produce a single performance review or documented evaluation of Plaintiff's performance falling below some legitimate standard.  However, as noted by Defendant, regardless of whether General Products' provided Plaintiff with a review during his short tenure, there is admissible evidence supporting General Products' dissatisfaction with Plaintiff's performance at the time of his termination, much of which Plaintiff admits. Namely, Plaintiff admits that his CEO was not happy with his performance and that the CEO repeatedly talked to him about improving his performance. (Doc. 39, ¶ 37, 38; Doc. 43, ¶ 37, 38).  Furthermore, the EBITA numbers demonstrate that the performance of the plants continued to decline during Plaintiff's tenure.  (*See* Doc. 39, Ex. 15).

As such, the undersigned agrees, that plaintiff has not demonstrated the third

element of his *prima facie* case. However, even if plaintiff could establish that he was qualified for the position, his claim(s) of national origin/race discrimination still fail because, as explained below, he has failed to satisfy the fourth element of *a prima facie* case.

The fourth element requires Plaintiff to establish that he was replaced by an individual outside the protected class. *Mitchell,* 964 F.2d at 582. Plaintiff may also establish the fourth prong of a *prima facie* case of discrimination by showing that he was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002). If the plaintiff seeks to establish that he was treated less favorably than a similarly-situated individual, he must prove that all relevant aspects of his employment situation were similar to those of the employee with whom he seeks to compare himself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998).

First, the evidence establishes that Plaintiff was not replaced. His position was eliminated and the Plaintiff's former duties were spread to the CEO. An employee is not replaced when his duties are disbursed to other existing employees. *Parries v. Makino, Inc.,* 148 F. App'x 291, 298 (6th Cir. 2005) (holding, in a race discrimination context, that "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement"). *See Spencer v. Hilti,* 1997 U.S.App. LEXIS 16365, at *13 (6th Cir. June 27, 1997) (in finding that the plaintiff had not been replaced because her job duties were assumed by existing employees, the Court noted that *Barnes* drew a clear distinction between "the replacement of an employee and situations where there was a consolidation of jobs designed to eliminate

excess work capacity"); *Rush v. United Technologies,* 930 F.2d 453, 457 (6th Cir.1991) (employee was not replaced where "his duties were taken over by another person already in the employ of [defendant]").

Where a plaintiff cannot show he was replaced, however, he can still establish his *prima facie* case by alternatively providing "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes,* 896 F.2d at 1465; *see also Ridenour v. Lawson Co.,* 791 F.2d 52, 57 (6th Cir. 1986) (a plaintiff "terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination"). As described below, however, Plaintiff fails to produce sufficient evidence as to this alternative prong as well.

To be treated as similarly-situated, an employee must "have dealt with the same supervisor [as the plaintiff], have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583. Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated. *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 801, 802 (6th Cir. 1994).

The plaintiff need not demonstrate similarity in all respects; and the Court should evaluate the factors discussed in *Mitchell*, to the extent they are relevant to the particular circumstances of the case. *See Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 394 (6th Cir. 2008) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Thus, Courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment

status and that of the non-protected employee." *Id.* (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)).

In support of his contention that he was treated less favorably than other similarly-situated employees, Plaintiff states, *in toto*:

> Plaintiff can also show that he was treated differently than similarly situated employees. The plant manager [Bennett] who Plaintiff replaced was never terminated nor was his salary reduced when plaintiff took over his job functions. *Affidavit of Jay Brahmbhatt*, ¶ 10. Further, the Caucasian CEO [Adler], who took over Plaintiff's job functions and was eventually terminated was paid his severance. *Id.* at ¶ 11.

(Doc. 43 at 6).

Notably, however, there is no evidence that Bennett violated any company policy or misused company resources; there is no record evidence of what the plant's EBITDA numbers were during his tenure. Similarly, with respect to Kevin Alder being paid severance, there is no evidence that Alder engaged in the same conduct as Plaintiff, or any misconduct for that matter. Furthermore, Alder cannot be similarly situated to Plaintiff for the additional undisputed reason that they held different positions. As detailed above, it is Plaintiff's burden to show that his alleged comparator is similarly situated in that he engaged in the same conduct for which Plaintiff was terminated. See *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 728 (6th Cir. 2004); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762-63 (6th Cir. 2000). Plaintiff has failed to present any such evidence in this case. In light of the foregoing, the undersigned finds that Plaintiff has failed to establish that he was treated less favorably than similarly-situated individuals outside the protected class.

4. *Defendant's legitimate non-discriminatory reason for Plaintiff's termination and Plaintiff's arguments regarding pretext*

Even if the Plaintiff could establish a *prima facie* case of discrimination, Defendant has proven a legitimate, nondiscriminatory business purpose for its actions. The evidence establishes that Plaintiff was terminated for failure to meet performance expectations, unprofessional conduct, and breach of fiduciary duty. Plaintiff's testimony also supports this finding. As detailed above Plaintiff admits that his CEO was not happy with his performance and that the CEO repeatedly talked to him about improving his performance.

In an effort to rebut Defendant's stated reasons for Plaintiff's termination, Plaintiff alleges that at the time of his termination, Defendant told him that it wanted to bring in a "consultant, consultant plant manager or white guy who could make more profit." (Doc. 43, Ex. 2, Brahmbhatt Aff., ¶ 7). Plaintiff also testified about numerous other racial statements. *Id.*, at ¶ 5. Plaintiff contends that these combined reasons raise a genuine issue of material fact as to why Plaintiff was fired. Such assertions, however, fail to establish that the stated reasons for Plaintiff's termination had no basis in fact; did not actually motivate the Defendant's decision; or were insufficient to warrant the decision. See *Manzer,* 29 F.3d at 1084.

As noted above, a reason cannot be a pretext for discrimination unless it is shown that the reason is both false and that discrimination was the real reason. *Johnson v. University of Cincinnati,* 215 F.3d 561, 573 (6th Cir.2000) (citing *St. Mary's Honor Center,* 509 U.S. 502, 113 S.Ct. 2742). To show pretext, an employee may not rely upon his *prima facie* evidence, but must, instead, introduce additional evidence of discrimination. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Automotive,* 579 F.3d 614

(6th Cir. 2009). Thus, uncorroborated, conclusory statements and self-serving allegations taken solely from Plaintiff's testimony cannot alone satisfy Plaintiff's burdens. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584 (6th Cir.1992). *See also Evans v. Jay Instrument & Specialty Co.,* 889 F.Supp. 302, 310 (S.D.Ohio 1985) (holding that plaintiff's self-serving conclusory declarations of actual discrimination on the part of the defendant decision makers were insufficient to raise a triable issue of pretext).

Here, Plaintiff's uncorroborated testimony, standing alone, is insufficient to meet his burden as to pretext. *See Adams,* 179 Fed. App'x at 274 (upholding district court grant of summary judgment where, by reference only to the plaintiff's self-serving deposition testimony and affidavits, the plaintiff "baldly assert[ed]" that the employer's proffered reasons for termination were pretextual); *see also Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 268 (6th Cir.1986) (stating that "mere personal beliefs, conjecture and speculation are insufficient" to support an inference of pretext).

In light of the foregoing, Plaintiff has failed to rebut defendant's legitimate non-discriminatory reasons for his termination and has failed to produce any evidence that Defendant intended to discriminate against plaintiff on the basis of national origin and/or race. *See Thurman*, 90 F.3d at 1166 (citing *Hicks*, 509 U.S. at 502) ("The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race.)" Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court. *Diaz v. Mitchell's Salon and*

*Day Spa, Inc.*, Case No. 1:09-cv-882, 2011 WL 379097, * 7 (S.D. Ohio 2011) (J. Weber). Plaintiff's unsupported conclusions are insufficient to meet his burden of establishing that Defendant's proffered reasons for his termination were a pretext for racial discrimination.

### III. Conclusion

For these reasons, **IT IS THEREFORE RECOMMENDED THAT:** (1) Plaintiff's motion for partial summary judgment (Doc. 38) be **DENIED**; and (2) Defendant's motion for summary judgment (Doc. 39) be **DENIED, in part,** with respect to Plaintiff's breach of contract claim; **GRANTED, in part,** as to Plaintiff's claims of national origin and/or race discrimination. Accordingly, Plaintiff's breach of contract claim should proceed to trial.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

JAY BRAHMBHATT,

     Plaintiff,

vs.

GENERAL PRODUCTS CORPORATION,

     Defendant.

Case No. 1:12cv919

Chief Judge Dlott
Magistrate Judge Bowman

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).